NEW YORK PRACTICE REPORTS.     **91**

People of the State of New York agt. Coman.

# NEW YORK COMMON PLEAS.

THE PEOPLE OF THE STATE OF NEW YORK agt. THOMAS
COMAN and MORGAN JONES.

*Practice of discharging judgments upon recognizances in criminal cases.*

The practice of the judges of this court of discharging judgments upon
recognizances on applications to which the district attorney has con-
sented to discharge them, upon proof that the accused has either been
surrendered by the bail or has surrendered himself and entered into a
new recognizance, approved by the district attorney, that he would
thereafter appear to be tried upon the indictment and submit to the
final judgment, sentence or order of the court, is incorrect and should
be abandoned. Reasons stated in the opinion of the court.

*General Term, March,* 1875.

*Per Curiam.* — A practice has arisen, during the past year,
in which all the judges of the court have participated, of dis-
charging judgments upon recognizances on applications to
which the district attorney has consented, to discharge them
upon proof that the accused has either been surrendered by
the bail or has surrendered himself and entered into a new
recognizance, approved by the district attorney, that he
would thereafter appear to be tried upon the indictment, and
submit to the final judgment, sentence, or order of the court.
The question has arisen whether this practice is correct; and
after a careful examination of the question, we are all of
opinion, upon the authorities, that it is not.

The rule to be deduced from the authorities is, that the
accused having once failed to appear, the judgment on the
forfeiture of his recognizance will not be remitted upon his
recaption or surrender until after he has been tried, and either

People of the State of New York agt. Coman.

convicted or acquitted.   The recognizance of bail is not designed as a satisfaction of the offense when it is forfeited; and, therefore, the accused is not discharged, even though the bail, upon the forfeiture of the recognizance, pays the full amount of the penalty; but the principal continues amenable to the law whenever he can be taken (*Petersdorf on Bail*, 516.)   By the common law, the recognizance attached to the lands and property of the bail, when it has been estreated into the exchequer; but with us, by statute, when the principal fails to appear, it is forfeited, and becomes a judgment, which is a lien upon the defendant's real estate.   When the recognizance was thus estreated or forfeited, it could not be discharged unless the principal appeared, and took his trial, and was either convicted or acquitted, or unless a compliance with the condition became impossible by the act of God, or of the law or of the obligee (*Rex* agt. *Spencer*, 1 *Wils.*, 315; *Rex* agt. *Grote*, 3 *Dow. P. C.*, 955; *Rex* agt. *Lyon*, 3 *Burr*, 1461; *King* agt. *Finmore*, 8 *T. R.*, 409; *Rex* agt. *Stancher*, 3 *Price*, 261; *Coke Lit.*, 206, *a*; *Vin. Abm.*, *Recognizance*, *E*; 1 *Price's Treatise on the Court of Exchequer*, *B. I.*, *chap.* 13).   The rule is that stated in *The King* agt. *Tomb* (11 *Mod.*, 278): "If recognizances are estreated into the exchequer because not punctually complied with, yet, if the party appear and take his trial at the next session, he may compound for a very small matter in the court of exchequer, because the effect, though not the exact form, of the recognizance is complied with; and in *Rex* agt. *Spence* (*supra*) the point, even where the principal had been tried and acquitted, was whether the recognizance could be discharged until the acquittal had been entered upon record, which the court at first doubted, but afterward, upon further consideration, they discharged the recognizance, being satisfied of the fact that the principal had been tried and acquitted.

By the act of 9th February, 1786 (1 *Greenleaf's Laws*, *p.* 200), a court of exchequer was created, held by the junior justice of the supreme court, at every term, as a distinct

People of the State of New York agt. Coman.

court, with a clerk and seal, which exercised the same general powers as the English court of exchequer as to enforcing or remitting fines and forfeitures. In the words of the statute it was, amongst other things, authorized, "upon good cause shown, to remit any such forfeitures, or part thereof, and to discharge such recognizance according to equity and justice;" which act, with some modification, was re-enacted in the Revised Laws of 1801 (*chap.* 135), and of 1813 (*chap.* 90, *and chap.* 104, § 1); and by the act of 1818 (*chap.* 283) the court of common pleas of the several counties had conferred upon them "the like power relative to the collection and remission of fines and forfeited recognizance," which had been by law "for that purpose vested in the court of exchequer;" and this was confirmed by the Revised Statutes (*vol.* 1, *p.* 486, § 37), and by the act of 1854 (*chap.* 198).

The former court of exchequer and this court, after succeeding to its powers in the exercise of this jurisdiction, have exercised it according to the practice settled by adjudged cases in the English court of exchequer; and if it had not, the propriety of the practice — as the court must act "according to equity and justice" — is obvious. It followed the practice of that court, not to discharge upon a surrender until the principal went to trial, and was either convicted or acquitted (*People* agt. *Petry*, 2 *Hilt.*, 523). There never was, except where it was indispensable — as in cases like *The Schuylkill Nav. Co.* agt. *Farr* (4 *Watts & Serg.*, 362) — any such practice as substituting a new recognizance for one estreated and forfeited, until the present district attorney introduced it by acquiescing in such applications and giving his certificate or opinion that, as far as he is informed, the people have lost no rights by reason of the failure of the bail to produce the principal; and that he believes them to be in as good a position to prosecute the principal upon the indictments as they were the day that the recognizance was forfeited; and that therefore he gives his assent to the discharge of the judgment on the recognizance. It appears that the recogniz-

ance in this case was forfeited in December, 1873; that in October, 1874, Coman surrendered himself, and that a new recognizance was then, with the district attorney's assent, taken for his further appearance, and that he has not yet been tried. In *Rex* agt. *Stancher* (3 *Price*, 261) the principal, after the forfeiture of the recognizance, was committed to prison ; and yet the court of exchequer refused to forfeit the recognizance, which was, with reference to the district attorney's reasons, a better situation to secure the principal's appearing and being tried for the offense than the acceptance of another recognizance for his appearance would have been.

The giving of a new recognizance does not put the people in as good a position as they were before the forfeiture, for the accused having failed to appear and stand his trial is in default; and the consequence of that default is, that the judgment is rendered against the bail, which is a lien upon his lands. If the judgment is discharged, upon the giving of a new recognizance, the accused may fail to appear again, and another judgment has to be entered, which may not be a security upon land, for the bail, if he be the same, may have then parted with his lands, or if he be another person; he may not have any. It is a security, therefore, for due vigilance on the part of the bail, that his land is bound and may be applied upon the judgment, if he does not secure the appearance of his principal ; and the law clothes him with extraordinary powers for that purpose. The practice of the English courts, as will appear from the cases cited, is to withhold the enforcement of the forfeiture over one or several terms, until a trial can be had.

The application must be denied.

Chief justice DALY, and judges ROBINSON, LOEW, LARREMORE and J. F. DALY concurred.